REDACTED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

R.F.M.A.S., INC.

                       Plaintiff,

      v.

MIMI SO, MIMI SO INTERNATIONAL, INC.,
RICHEMONT S.A., COMPAGNIE FINANCIERE
RICHEMONT S.A., RICHEMONT NORTH
AMERICA, RICHEMONT HOLDINGS I, and
RICHEMONT INTERNATIONAL, LTD.

                       Defendants.

-------------------------------------------------------- x

ECF CASE

Case No. 06-CV-13114 (VM)(MHD)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERTS

Richard Z. Lehv (rlehv@fzlz.com)
John P. Margiotta (jmargiotta@fzlz.com)
Alexander L. Greenberg (agreenberg@fzlz.com)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, New York 10017
Tel.: (212) 813-5900
Fax: (212) 813-5901

*Attorneys for the Richemont Defendants*

Deepro R. Mukerjee
(*Deepro.Mukerjee@alston.com*)
90 Park Avenue
ALLSTON & BIRD LLP
New York, NY 10016
Tel.: (212) 210-9501
Fax: (212) 922-3881

*Attorneys for Defendants Mimi So and
Mimi So International, Inc.*

{F0545717.3 }

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................... III

PRELIMINARY STATEMENT............................................................................... 1

STATEMENT OF FACTS ...................................................................................... 1

ARGUMENT............................................................................................................ 3

I.   LEGAL STANDARD FOR EXCLUSION OF EXPERT
TESTIMONY ................................................................................................ 3

II.   THE COURT SHOULD EXCLUDE PLAINTIFF'S DAMAGES
EXPERTS, SMITH AND HANSEN ............................................................ 4

   A.   Smith's and Hansen's Opinions Lack a Reliable Foundation........................... 4

     1.   Smith's and Hansen's Opinions Are Unreliable Because They
Are Based Entirely on Information Compiled by Plaintiff's Counsel ...................... 4

     2.   Smith's and Hansen's Opinions on Neiman's Motivation Are
Inadmissible Because They Do Not Have the Requisite Expertise ........................ 6

     3.   Smith's and Hansen's Opinions Are Inadmissible Because Based
on Nothing More Than a Temporal Relationship ................................................ 8

     4.   Smith's and Hansen's Opinions Are Unreliable Because They
Do Not Accurately Present The Data.............................................................. 9

     5.   Smith's and Hansen's Opinions Are Unreliable Because They
Fail to Address Alternative Causes for the Decline in Plaintiff's Sales
to Neiman................................................................................................. 10

     6.   Smith's and Hansen's Reliance on Plaintiff's Sales to Saks Fifth
Avenue is Misplaced .................................................................................. 13

     7.   Smith's and Hansen's Opinions Are Unreliable Because They
Fail to Use Scientifically Reliable Methods to Calculate Damages ..................... 14

   B.   Smith's and Hansen's Opinions Not Related to Damages Are
Inadmissible ............................................................................................ 16

   C.   Smith's and Hansen's Opinions Will Not Be Helpful to the Trier of
Fact ....................................................................................................... 17

III.   THE COURT SHOULD EXCLUDE PLAINTIFF'S LIABILITY
EXPERTS, JONAS AND LEWAND................................................................ 17

   A.   Jonas's and Lewand's Opinions Will Not Be Helpful to the Trier of
Fact ....................................................................................................... 17

     1.   The Subject Matter is So Simple as to Not Require Experts'
Help........................................................................................................ 18

2.   Jonas and Lewand Do Not Attempt to Distinguish Between Similarities that Relate to Unprotectable, Commonplace Jewelry Forms, as Opposed to Protectable Expression ................................................................. 18

B.   Jonas and Lewand Have No Expertise to Opine on Consumer Confusion ........................................................................................................... 19

C.   Jonas's and Lewand's Incidental Opinions Are Inadmissible ............................ 19

CONCLUSION ......................................................................................................... 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

*In re Agent Orange Product Liability Litigation*, 611 F. Supp. 1223 (E.D.N.Y. 1985) ...................4

*Amorgianos v. National R.R. Passenger Corp.*, , 303 F.3d 256 (2d Cir. 2002) ........................4, 17

*Awad v. Merck & Co.*, 99 F. Supp. 2d 301 (S.D.N.Y. 1999) ........................................................8

*Basile v. New York*, 215 F. Supp. 2d 354 (S.D.N.Y. 2002)..........................................................3, 7

*Brazier v. Hasbro, Inc.*, 2004 WL 515536 (S.D.N.Y. Mar. 16, 2004)..........................................7, 8

*Castle Rock Entertainment v. Carol Publishing Group*, 150 F.3d 132 (3d Cir. 1998)...................18

*Cavallo v. Star Enterprises*, 892 F. Supp. 756 (E.D. Va. 1995) .....................................................9

*Cella v. United States*, 998 F.2d 418 (7th Cir. 1993)........................................................................

*Conde v. Velsicol Corp.*, 804 F. Supp. 972 (S.D. Ohio 1992) .........................................................9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ...................................3, 4, 19

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311 (9th Cir. 1995) ........................9, 11

*Hellver v. Shaw Industries Inc.*, 167 F.3d 146 (3d Cir. 1999)........................................................4

*Isreal v. Springs Industries, Inc.*, 2006 WL 3196956 (E.D.N.Y Nov. 3, 2006) .............................10

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).....................................................................3

*Lava Trading Inc. v. Hartford Fire Ins. Co.*. 2005 WL 4684238 (S.D.N.Y.
   Apr. 11, 2005) ....................................................................................................................3, 14, 15

*Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998) .....................................................3

*In re Paoli R. R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994).........................................................4

*Porter v. Whitehall Laboratories, Inc.*, 9 F.3d 607 (7th Cir. 1993)...................................................9

*Price v. Fox Entertainment Group, Inc.*, 499 F. Supp. 2d 382 (S.D.N.Y. 2007)............................18

*Robinson v. Sanctuary Record Groups, Ltd.*, 524 F. Supp. 2d 284 (S.D.N.Y. 2008)..............5, 6, 7

*Salem v. U.S. Lines Co.*, 370 U.S. 31 (1962) ...............................................................................17

*Schmaltz v. Norfolk & Western Ry. Co.*, 878 F. Supp. 1119 (N.D. Ill. 1995) ..................................9

*Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291 (S.D.N.Y. 2001)......................................................19

*Tyger Construction Co. v. Pensacola Construction Co.*, 29 F.3d 137 (4th Cir. 1994)...................14

*Zaremba v. GMC*, 360 F.3d 355 (2d Cir. 2004) ...............................................................................3

### FEDERAL RULES

Fed. R. Evid. 403 .................................................................................................................12, 19

Fed. R. Evid. 702 ........................................................................................................................19

Fed. R. Evid. 703 ................................................................................................................. *passim*

### MISCELLANEOUS

Kenneth S. Brown, McCormick on Evidence (6th ed. 2006) ...........................................1, 3, 8, 12

Jessica M. Utts, *Seeing Through Statistics* (2005) ...........................................................................8

## PRELIMINARY STATEMENT

In this action, Plaintiff claims infringement of the copyright in its jewelry designs.  Plaintiff also claims trade dress infringement, unfair competition, breach of a confidentiality agreement and misappropriation of trade secrets. Amended Complaint (Docket No. 25).

On September 15, 2009, Plaintiff served four expert reports: two on liability and two on damages.  *See* Exhs. 1-4.[1]  None of these experts offer any "scientific, technical or other specialized knowledge," as required by Rule 702, Fed. R. Evid.  Rather, the reports "amount to nothing more than an expression of [the experts'] general belief as to how the case should be decided and the amount of damages which would be just."  1 Kenneth S. Brown, McCormick on Evidence (6th ed. 2006) § 12 at 60.  As McCormick has found, "[a]ll courts exclude such extreme, conclusory expressions." *Id.*

Expert discovery closed on November 15.  Defendants now move to exclude from trial the reports and testimony of Plaintiff's experts.  Allowing the jury to hear bogus, multi-million dollar damages claims under the guise of "Expert Testimony" would be highly prejudicial to Defendants and would waste the jury's time.  Excluding Plaintiff's experts will greatly simplify the case, since it will eliminate not only Plaintiff's experts but also much of Defendants' expert testimony.

## STATEMENT OF FACTS

Plaintiff's liability experts, Joyce Jonas and Edward Lewand, compare Plaintiff's jewelry to defendant Mimi So's jewelry.  Lewand, who is a jewelry appraiser, and who has no expertise in consumer opinion and has not done a consumer survey, opines that Mimi So's jewelry designs "would be confusing to the public." Lewand Rpt. at 4. Jonas, a jewelry historian who has no personal knowledge as to how Mimi So created her jewelry, opines that, because of similarities

---

[1] The Exhibits to this motion are attached to the accompanying declaration of Richard Lehv. Experts' reports are cited as "Smith Rpt. at __," "Hansen Rpt. at __," etc.  Pages from the depositions of Plaintiff's experts (Exhs. 5-8) are cited as "Smith Dep. at __," "Hansen Dep. at __," etc.

in the designs, "it would appear that Defendant had to have copied the Plaintiff's jewelry." Jonas Rpt. at 7.

The damages reports are from Don Smith and Steven Hansen. They each follow the same steps in reaching their conclusions. First, Plaintiff's counsel told them "to assume infringement, misappropriation of trade secrets, and breach of contract occurred." Hansen Rpt. at 4. Second, Plaintiff's counsel gave them "customer and product sales analyses compiled by [Plaintiff]." *Id.* These analyses allegedly show that, after Mimi So started selling jewelry to Neiman Marcus, Inc. ("Neiman"), Plaintiff's sales to Neiman "began to rapidly fall." Smith Rpt. at 6. Third, without inquiring of Neiman as to why it reduced its purchases, or conducting any other research or investigation, and ignoring numerous possible explanations for the alleged decline in sales, Smith and Hansen opine that Neiman decided to purchase Mimi So's jewelry in place of Plaintiff's. Hansen Rpt. at 8; Smith Rpt. at 7.

Smith and Hansen's opinions thus boil down to simple circular reasoning: "If you assume infringement, as I did, we believe that the sales were diminished because of the infringement . . . ." Hansen Dep. at 51.

Finally, to quantify the alleged damage to Plaintiff, Smith and Hansen graph the trend of Plaintiff's sales to Neiman prior to Mimi So's introduction of her product, and claim that the graph would have continued indefinitely along the same upward trajectory. Smith Rpt. at 12. The resulting path, they claim, shows Plaintiff's lost sales. Smith Rpt. at 12, Hansen Rpt. at 16. However, because they fail to show any causation between (a) Mimi So's sales to Neiman and (b) Neiman's declining purchases from Plaintiff, there is no basis for the claim of damages based on lost sales.

## ARGUMENT

## I.  LEGAL STANDARD FOR EXCLUSION OF EXPERT TESTIMONY

The Court is a gate-keeper for expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); accord, *Lava Trading Inc. v. Hartford Fire Ins. Co.*, No. 03-CV-7037 (PKC) (MHD), 2005 WL 4684238, at *9 (S.D.N.Y. Apr. 11, 2005).  The Court has a duty to admit only testimony that complies with Rule 702, Fed. R. Evid.  If the expert testimony is not based on sufficient facts or data, does not stem from reliable principles and methods, or misapplies the principles or methods to the facts of the case, the testimony must be excluded.  *Id.*  The Supreme Court set out the criteria for admissibility of expert scientific testimony in *Daubert*, and later expanded its analysis to all expert opinions and evidence in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

*Daubert* calls for a three-step analysis: "First, the Court must determine whether the testimony rests on a reliable foundation, or whether the expert's testimony is 'more than subjective belief or unsupported speculation.' *Daubert*, 509 U.S. at 590.  Second the testimony must be relevant in that it 'fits' the facts of the case.  *Id.* at 591-592.  Finally, it must 'assist the trier of fact to understand the evidence or to determine a fact in issue.' *Id.* at 580, Fed. R. Evid. 702." *Bazile v. New York*, 215 F. Supp. 2d 354, 365 (S.D.N.Y. 2002).

Based on the reports and depositions of Plaintiff's experts, Plaintiff cannot meet its burden of demonstrating that the expert testimony meets the *Daubert* criteria.  *See, e.g., Zaremba v. GMC*, 360 F.3d 355, 358 (2d Cir. 2004); *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).  Therefore, the Court should preclude Plaintiff's expert reports and testimony from use at trial.

## II.   THE COURT SHOULD EXCLUDE PLAINTIFF'S DAMAGES EXPERTS, SMITH AND HANSEN

### A.   Smith's and Hansen's Opinions Lack a Reliable Foundation

Smith and Hansen fail to meet the first prong of the *Daubert* test by using unreliable data, opining outside of their expertise, using scientifically unacceptable methods, and relying on their own "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; *Cella v. U.S.*, 998 F.2d 418, 423 (7th Cir. 1993) (*citing In re Agent Orange Prod. Liab. Litigation*, 611 F.Supp. 1223, 1244, 1248-49 (E.D.N.Y. 1985), *aff'd*, 818 F.2d 187 (2d Cir.1987)) (Rule 703 requires that "expert testimony . . . be rejected if it lacks an adequate basis in fact. An expert witness cannot simply guess or base an opinion on surmise or conjecture.").

### 1.   *Smith's and Hansen's Opinions Are Unreliable Because They Are Based Entirely on Information Compiled by Plaintiff's Counsel*

*Daubert* requires that experts verify and test each aspect of their testimony. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) *quoting In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994); *citing Heller v. Shaw Indus. Inc.*, 167 F.3d 146, 155 (3d Cir. 1999) ("The reliability analysis applies to all aspects of an expert's testimony: the methodology, *the facts underlying the expert's opinion*, the link between the facts and the conclusion, *et alia*.") (emphasis added). Every shred of data Smith and Hansen rely on was provided by Plaintiff's counsel, and neither expert expended any significant effort to verify the accuracy of these data. Instead, Smith and Hansen either just trusted Plaintiff's lawyers or satisfied themselves with a cursory "spot-check." Smith Dep. at 22.

Smith and Hansen rely chiefly on Plaintiff's sales data, including its sales to Neiman, where Mimi So's jewelry was also sold, and its sales to Saks Fifth Avenue ("Saks"), which did not carry Mimi So's collection. *See* Smith Rpt. at 3, Hansen Rpt. at 8. According to Smith's testimony, Plaintiff's sales data were not kept in an organized and easily accessible manner. *See* Smith Dep. at 14-21. Smith describes the Plaintiff as "a small business," where "counting things is not necessarily [the] biggest priority." Smith Dep. at 20. Other obstacles to obtaining reliable sales

data included frequent rotation of bookkeepers and accounting firms by Plaintiff and a change of computer systems during the period of interest. *See* Smith Dep. at 21. In fact, Smith admitted that some of Plaintiff's historical sales data were unusable, because they were "just simply incomplete." Smith Dep. at 15.

Smith admitted at his deposition that he did not personally review Plaintiff's books and records, but analyzed sales data compiled by Elaina Anderson. *See* Smith Dep. at 15. Anderson is an accountant employed by the law firm of Kilgore & Kilgore – Plaintiff's counsel! *Id.* According to Smith, to obtain the sales data, Anderson went through "R.F.M.A.S. invoices to . . . their retailers, and summarized their sales in several categories by month historically." Smith Dep. at 16. Interestingly, although Smith himself was "not able to get complete data" from R.F.M.A.S., Anderson purportedly succeeded. Smith Rpt. at 19. In an even more fortuitous coincidence, Anderson was able to isolate sales to Neiman – the very store at issue – and one other luxury goods department store, Saks, although she failed to isolate sales from most other stores. *Id.* Or at the very least, as Smith puts it, Anderson "did the best she could do with those two retailers." *Id.*

Although Smith said he is "very comfortable with the data that [Anderson] provided in relation to those two retailers," that type of scrutiny does not satisfy the *Daubert* standard for reliability. In fact, in similar circumstances, Judge Marrero excluded the testimony of an expert who failed to "conduct an independent audit" of information provided to him by plaintiff's counsel. *Robinson v. Sanctuary Record Groups. Ltd.*, 542 F. Supp. 2d 284, 292 (S.D.N.Y. 2008) (Marrero, J.). Here, Smith merely "spot-checked a number of the monthly totals" provided by Plaintiff's counsel, neglecting even to examine all of the original invoices, which he apparently received. Smith Dep. at 22.

Smith and Hansen also considered Mimi So's sales to Neiman, but only for a limited time period, selected by Plaintiff's lawyers. *See* Smith Dep. at 53-54 ("I asked the attorneys if they had . . . any ability to secure additional sales, and they said this is the most recent data we've been able to secure."); *see also* Smith Dep. at 60 ("I asked for additional information, and I was

told that this is the most recent I could get."). In fact, Mimi So produced to Plaintiff's counsel sales data for the period 2006 through 2009, but Smith failed to look at it when he prepared his report. *See* Smith Dep. at 54-55.

Smith and Hansen also rely on a timeline shown in Smith's Graph 2. Smith Rpt. at 5, Hansen Rpt. at 8. As with the sales data, the timeline was not a product of any independent investigation by Smith or Hansen, but rather was supplied by Plaintiff's counsel. *See* Smith Dep. at 45, Hansen Dep. at 111. In short, Smith and Hansen fit certain "milestone" dates given to them by Plaintiff's counsel to sales data given to them by Plaintiff's counsel, and then explained any apparent coincidences in Plaintiff's favor. But as this Court has previously held, an opinion "founded on hearsay supplied by Plaintiffs' counsel – hardly a source of first-hand, independent expert knowledge – incomplete comparisons, and dubious assumptions" must be excluded. *Robinson*, 542 F. Supp. 2d at 292.

## 2. *Smith's and Hansen's Opinions on Neiman's Motivation Are Inadmissible Because They Do Not Have the Requisite Expertise*

The basic premise of Smith and Hansen's reports is that Neiman reduced its purchases from Plaintiff because of Defendants' conduct. If Neiman acted for reasons having nothing whatever to do with Defendants – and there could be countless such reasons – then obviously there can be no actionable damages.

There is no evidence that Neiman reduced its purchases from Plaintiff because of any act of Defendants. Significantly, Plaintiff's experts point to no memo, email, letter or other written or oral communication from Neiman that explains why it reduced its purchases. Moreover, although Plaintiff took the deposition of Neiman, Plaintiff's counsel never asked why Neiman decided to reduce its purchases of his client's products. In fact, when the Neiman witness mentioned that sales of Plaintiff's products were down, Plaintiff's counsel changed the subject, rather than ask why sales were down. Ex. 9 (Lisa Kazor Dep. at 309-310).

Without any evidence to support their theory, Smith and Hansen have no choice but to go beyond their supposed expertise, into the realm of mind reading. Hansen's hypothesis is that

Neiman felt the Mimi So goods were "identical" to Plaintiff's (Hansen Dep. at 67) and decided to substitute Mimi So's products for Plaintiffs:

> In my opinion, it was - it was an obvious substitution. The products copied by Mimi So were introduced into the marketplace, and as they gained traction in the market, in my opinion, the RFMAS products would have been sold out of inventory and basically not reordered causing, obviously, sales to decline at RFMAS as the copied products were substituted.

Hansen Dep. at 93. Smith claims Plaintiff "got pushed out" of Neiman, as a result of some unspecified conduct of Defendants that somehow influenced Neiman. Smith Dep. at 196. As support for his theory, Smith chose simply to rely on Hansen's opinion. (Smith Dep. at 97-98; 201) ("I know that Steve Hansen believes that Richemont had a very heavy hand. That's not my opinion, because I don't have that background . . . .")

As judge Marrero wrote in *Robinson*, "[t]he Second Circuit has instructed that a trial court, in determining whether a witness is qualified to render an expert opinion, 'must first ascertain whether the proffered expert has the educational background or training in a relevant field.' Then the court 'should further compare the expert's area of expertise with the particular opinion the expert seeks to offer and permit the expert . . . to testify only if the expert's particular expertise . . . enables the expert to give an opinion that is capable of assisting the trier of fact.'" 542 F. Supp. 2d at 290 (citations omitted).

Since neither expert has any expertise in Neiman's motivation, their opinions on this subject are pure speculation and therefore inadmissible. *Brazier v. Hasbro, Inc.*, No. 99 Civ. 11258 (MBM), 2004 WL 515536, at *7 (S.D.N.Y. Mar. 16, 2004) (toy design engineer could not give his opinion as to a child's motivations in putting a toy into the child's mouth); *Bazile*, 215 F. Supp. 2d at 365 (proffered expert has "no particular expertise that would qualify to assess whether a discriminatory animus motivated the NYPD in this case.") (Marrero, J. affirming Dolinger, M.J.). Moreover, given the total lack of any actual inquiry into Neiman's reasoning, "[e]ven if [the experts] were qualified to provide expert testimony about [third-party's] intent,

[their] opinion would have to be unreliable and speculative because it lacks a factual basis." *Brazier* at *7.

### 3. Smith's and Hansen's Opinions Are Inadmissible Because Based on Nothing More Than a Temporal Relationship

Unable to point to any evidence that Neiman acted because of any conduct by Defendants, Smith and Hansen try to support their conclusions regarding causation of damages with the observation (supplied by Plaintiff's counsel) that Neiman's purchases from Plaintiff declined after Mimi So started selling jewelry to Neiman. *See* Smith Rpt. at 5-7, Hansen Rpt. at 12. They conclude from this observation that Mimi So's actions must have caused Neiman's actions. *See* Smith Rpt. at 5-7, Hansen Rpt. at 12.

A temporal relationship is not the same as a causal relationship. Event A may have occurred before Event B, but that does not mean Event A *caused* Event B. Any textbook on statistics will explain the difference:

> Even if two variables are legitimately related or correlated, do not fall into the trap of believing there is a causal connection between them. ... A list of shoe sizes and vocabulary words mastered by school children would certainly exhibit a correlation because older children tend to have larger feet and to know more words than younger children. ... Remember that data from an observational study, in the absence of any other evidence, *simply cannot be used to establish causation.*

Jessica M. Utts, *Seeing Through Statistics* at 206 (2005) (emphasis added).[2]

The courts agree. "'It is well settled that a causation opinion based solely on a temporal relationship is not derived from the scientific method and is therefore insufficient to satisfy the requirements of Fed. R. Evid. 702.'" *Awad v. Merck & Co.*, 99 F. Supp. 2d 301, 304 (S.D.N.Y.

---

[2] As another example, airplanes in flight often begin to be rocked by turbulence moments after the passengers fasten their seatbelts. This does not mean that putting on seatbelts causes the plane to rock. In fact, passengers put on their seatbelts because radar has told the pilot that the plane is heading into turbulent air, and the captain has told the passengers to fasten their seatbelts. Under Smith and Hansen's reasoning, fastening seatbelts would be the cause of the plane's rocking.

1999), *quoting*, *Schmaltz v. Norfolk & Western Ry. Co.*, 878 F. Supp. 1119, 1122 (N.D. Ill. 1995); *see also Cavallo v. Star Enter.*, 892 F.Supp. 756, 773 (E.D.Va. 1995), *aff'd in relevant part*, 100 F.3d 1150 (4th Cir.1996) (temporal relationship combined with subjective belief that causation is possible "is not the method of science"); *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 611 (7th Cir. 1993) (expert opinions excluded where based solely on temporal relationship between ingestion of ibuprofen and injury); *Conde v. Velsicol Corp.*, 804 F. Supp. 972, 1023 (S.D. Ohio 1992), *aff'd* 24 F.3d 809 (6th Cir. 1994) (expert opinions excluded where based solely on temporal relationship between exposure to insecticide and injury); *Daubert v. Merrell Dow Pharms. (Daubert II)*, 43 F.3d 1311, 1319 (9th Cir. 1995) (basing expert opinion on timing of ingestion of drugs by plaintiff is "[p]ersonal opinion, not science.").

By relying on the timing of Neiman's declining purchases, Smith and Hansen base their opinion on nothing more than a temporal relationship. Smith's and Hansen's opinion should therefore be excluded.

### 4. Smith's and Hansen's Opinions Are Unreliable Because They Do Not Accurately Present The Data

The second prong of the *Daubert* test requires that the expert's opinions fit the fact of the case. Smith's and Hansen's opinions do not fit the facts. Rather, they mischaracterize the facts.

Smith and Hansen claim that Neiman's purchases from Plaintiff declined after Neiman began to purchase jewelry from Mimi So. *See* Smith Rpt. at 6; Hansen Rpt. at 10. In fact, Mimi So made her first sale to Neiman in May, 2006. Three months later, in August 2006, Neiman made its biggest monthly purchase ever from Plaintiff, and in April 2007 it made its third biggest monthly purchase from Plaintiff. Smith Rpt. at 6 (Graph 3); Ex. 10 (report of Defendant's expert Michele Riley at Exhibits 3.2, 3.3).

Smith claims that from January to December 2007 "Mimi So's sales rapidly increase." Smith Rpt. at 5, Graph 2. In fact, Neiman's monthly purchases from Mimi So during this period fluctuated widely, going from $███ to $███, then down to zero, back to a peak in June 2007 of $███, back down to zero, up to $███ and finally ending in December 2007 at zero

again. Smith Rpt. at 6, Graph 3. Smith is able to make his claim that "Mimi So's sales rapidly increase" because he has manipulated the data. Instead of showing monthly sales on his graphs, he shows what he calls "twelve month moving totals." In other words, each point on Smith's sales graphs that appears to depict the quantity of sales made during a particular month actually depicts the total of all sales for the prior twelve months. Smith Dep. at 45-46. This obviously has the effect of hiding any month-to-month variations in sales.

Smith and Hansen do not report Mimi So's sales to Neiman after December 2007. Far from increasing, Mimi So's sales to Neiman after December 2007 fluctuated from month to month, never again reaching the June 2007 peak. In fact, in most months after December 2007, Neiman bought *nothing* from Mimi So, and by August 2009 Neiman's purchases from Mimi So had declined to zero. *See* Riley Rpt. at Exhibits 3.2, 3.3. Obviously, Smith and Hansen chose not to report Mimi So's sales to Neiman after December 2007 because the data disproves Plaintiff's theory.

Hansen claims that Neiman "substituted" Mimi So's products for Plaintiff's products. In fact, in all but three of the thirty-nine months from May 2006 (when Neiman made its first purchase from Mimi So) to August 2009 (the last month for which data is available), Neiman's monthly purchases from Plaintiff *exceeded* its purchases from Mimi So (Riley Rpt. at 13-14, Exhibits 3.2, 3.3), and Neiman's total purchases from Plaintiff during that thirty-nine month period far exceeded its total purchases from Mimi So (*Id.*).

In short, Smith and Hansen cannot be permitted to give the jury demonstrably false and incomplete data, and their reports and testimony should be excluded.

## 5. *Smith's and Hansen's Opinions Are Unreliable Because They Fail to Address Alternative Causes for the Decline in Plaintiff's Sales to Neiman*

Expert testimony that fails to test a hypothesis by examining alternate explanations for causation is unreliable and should be excluded. *Israel v. Springs Indus., Inc.*, No. 98 CV 5106, 2006 WL 3196956, at *5 (E.D.N.Y. Nov. 3, 2006) ("While an expert need not rule out every

potential cause in order to satisfy *Daubert*, the expert's testimony must at least address obvious alternative causes and provide a reasonable explanation for dismissing specific alternate factors identified by the defendant."); *Daubert II*, 43 F.3d at 1319 ("Dr. Palmer offers no tested or testable theory to explain how, from this limited information, he was able to eliminate all other potential causes of birth defects.')

Beyond trying to guess Neiman's reasons for reducing its purchases of Plaintiff's jewelry, Smith and Hansen made no effort to investigate and attempt to rule out the likely alternatives to Plaintiff's preferred explanation. Smith's only reference in his report to consideration of alternative theories consists of these two perfunctory sentences:

> I have considered alternative theories of causation, including the economy, the potential shift of consumer preferences and Neiman Marcus dropping plaintiffs for other reasons. However, I did not find any documents or other evidence that could explain why Neiman Marcus's sales of RFMAS fell so rapidly.

Smith Rpt. at 7.

When asked at his deposition what efforts he made to investigate other possible explanations, his answer was that he asked Hansen. Smith Dep. at 101 ("I relied on Steve Hansen's opinion and research . . . I asked Steve Hansen if he could find any data, any other reason why it would occur and he said: No, I could find none."). In other words, Smith did *nothing* to investigate alternate theories of causation. As for Hansen, he, too, utterly defaulted in investigating alternate theories of causation and in fact relied on that default to support his conclusion. When asked for the basis for his belief that Defendants unseated Plaintiff as a vendor to Neiman, his answer was, "That I don't have evidence to contradict it." Hansen Dep. at 89.

Moreover, Hansen himself listed numerous factors that a department store would consider before deciding to substitute one vendor for another. These factors include whether one vendor has better brand recognition; whether one vendor offered more attractive price or sales terms, and

whether one offered rebates for advertising. *See, e.g.*, Hansen Dep. at 96-103. Hansen did nothing to investigate these factors to test whether his "substitution" hypothesis made sense. *Id.*

Had they bothered to look, Smith and Hansen could readily have found evidence of "Neiman Marcus dropping plaintiffs for other reasons." First, rather than delivering its goods to Neiman on consignment, like many other jewelry makers, Plaintiff sold its goods to Neiman outright. *See* Ex. 11 (deposition of Amedeo Scognomiglio at 66-67). Perhaps Neiman grew tired of paying for Plaintiff's products, instead of taking them on consignment, which would not require a cash outlay by Neiman until it sold the goods to a consumer. Second, Plaintiff's principals failed to appear at scheduled personal appearances and "trunk shows" at Neiman to promote their jewelry. Ex. 12 at 0002863 ("So I guess it will be best to suspend all our Personal Appearances and trunk shows in your stores . . . .") Perhaps Neiman grew tired of a vendor who did not cooperate in marketing efforts.

Third, Plaintiff sells its products on Home Shopping Network (HSN), the TV retail channel. *See* Ex. 13. Perhaps Neiman, which has for over a century "stayed focused on serving the unique needs of the luxury market," and which considers itself "the premier luxury retailer dedicated to providing our customers with distinctive merchandise and superior service,"[3] no longer wanted to feature a vendor whose goods were promoted on HSN. *See* Ex. 14 (report of Defendant's expert Carolyn Kelly at 4) ("it is likely that a very exclusive retailer would no longer wish to carry [Plaintiff's] products once they lost their exclusivity by being widely available in Saks, Macy's, Bloomingdale's and HSN.").

Because Smith and Hansen failed to analyze likely alternate explanations for the decline in Neiman's purchases from Plaintiff, and instead summarily rejected all but Plaintiff's preferred explanation, their reports are wholly unreliable. Therefore, Smith's and Hansen's reports should be excluded under Rules 702 and 403.

---

[3] http://phx.corporate-ir.net/phoenix.zhtml?c=118113&p=irol-irhome

**6.   *Smith's and Hansen's Reliance on Plaintiff's Sales to Saks Fifth Avenue is Misplaced***

Smith and Hansen try to bolster their speculative opinion on causation by pointing to Plaintiff's sales to Saks, a store that does not carry Mimi So's products and where, they claim, Plaintiff's sales rose, while declining at Neiman. Plaintiff's successful performance at Saks, they claim, demonstrates that Mimi So must have caused the decline at Neiman. *See* Smith Rpt. at 3, 5, 6, 11-13, 17; Hansen Rpt. at 6, 11, 13, 17. However, neither Smith nor Hansen is able to show that Saks is a good benchmark with which to compare sales at Neiman. First, Smith admitted at his deposition that Saks and Neiman carried a different mix of Plaintiff's products. Only 21% of Plaintiff's products sold to Saks consisted of the allegedly infringed Stella Collection, while 45% of the Plaintiff's goods sold to Neiman consisted of the Stella Line. Smith Dep. at 164-166. Obviously, if the public was simply tiring of the Stella line, Plaintiff's sales at Neiman would decline more than its sales at Saks. And, if Saks was particularly skillful at selecting products designed by Plaintiff that the public liked far better than the Stella line, sales at Saks would increase while sales at Neiman declined.

Further, there is reason to believe that Plaintiff's sales at Saks did not behave significantly differently from Plaintiff's sales at Neiman, and therefore the entire premise of Plaintiff's argument is wrong. Smith and Hansen base their claim that sales at Saks increased by using "twelve month moving totals," described above. When Plaintiff's sales to Neiman and Saks are graphed using actual monthly or quarterly sales data, it is clear that sales to both stores follow the same general pattern. *See* Ex. 15 (report of Defendant's expert Steven Schwartz at Exhibits 4A and 4B). Sales to both Neiman and Saks increased in 2006, declined, increased in mid-2007, and then declined again.

The only difference is that a large sale to Saks seems to have occurred in one month, February 2009. However, Smith's use of a twelve month moving total hides the fact that this was a one-month "spike," and falsely suggests an upward trend in sales to Saks. Moreover, neither Smith nor Hansen explains this one-time event. For all we know, this "spike" might be

the result of nothing more than an error in the data that Elaina Anderson calculated or Plaintiff may have made a one-time sale of certain goods, having nothing to do with this case, at a special price. In any event, this large, one-time sale shows that Saks is not a good benchmark.

Finally, Smith and Hansen do not consider the possibility that sales to Saks may have *caused* the decline in sales at Neiman. It is possible that Saks did a better job (with the cooperation of Plaintiff's principals) in selling Plaintiff's goods than did Neiman, and consumers who wanted to buy Plaintiff's goods bought them at Saks *instead of* at Neiman. At the same time, Neiman may have decided to reduce its purchases of Plaintiff's products because they were being sold and promoted by a rival retailer. Kelly Rpt. at 4.

Thus, Smith's and Hansen's attempt to use sales to Saks to prop up their unreliable opinions fails.

### 7.   *Smith's and Hansen's Opinions Are Unreliable Because They Fail to Use Scientifically Reliable Methods to Calculate Damages*

After opining on causation, Smith sets forth his calculation of damages, which he equates to lost profits in the future. *See* Smith Rpt. at 10-19. Hansen endorses Smith's calculations and adds his own estimate of an "impact on the enterprise value of R.F.M.A.S." *See* Hansen Rpt. at 16-18. Both of these calculations are completely unreliable, and should be excluded.

First, Smith's and Hansen's calculations of damages cannot be admitted in evidence because they are based on faulty data and unreliable theories of causation, as explained above. *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994) ("An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record. . . . An expert's opinion as to damages must be causally related to the alleged harm.") (citations omitted).

Second, Smith and Hansen use methods to calculate future profits that have none of the hallmarks of reliability required by *Daubert*. First, the Court has recognized that "a putative expert who seeks to estimate 'but for' sales cannot rely on his 'industry experience' or its equivalent as a substitute for a methodology that looks to a specific data and proceeds to make

statistically or significantly valid inferences from the data." *Lava Trading*, 2005 WL 4684238, at *17.

Plaintiff's impressionistic approach to calculating "but for" losses is inadmissible. "The witness must look to comparable markets, and if they differ from the market for which he is offering predictions, he must utilize professionally accepted methods of making comparisons . . . ." *Lava Trading*, 2005 WL 4684238, at *17. Not only do Smith and Hansen fail to make such a comparison, but also Smith testified that he was unaware of any data regarding "specific growth curves within the jewelry market." Smith Dep. at 223-224.

The methodology for determining lost profits used by Smith and endorsed by Hansen is not generally accepted and appropriate. To arrive at his estimate of lost profits, $██ million, Smith graphed a twelve-month moving total of Plaintiff's sales to Neiman until their peak in mid-2006[4]. Smith Rpt. at 12. He then used Excel software to fit a straight trend line to the existing graph. *Id.* Smith then continued the straight trend line for another five years – until the end of 2013. Smith Rpt. at 13. He then took the resulting estimate of sales for 2006-2013 and multiplied it by ██% – a number picked by Hansen based on his "experience" – to estimate the future profits that would have been earned "but for" Defendant's actions. Smith Rpt. at 13, Hansen Rpt. at 17.

Smith's estimates are plainly wrong. A straight line that is sloped upwards presumes a steady growth in Plaintiff's sales to Neiman over the next five years. Such an estimate does not take into account any of the real-world variables that influence sales of jewelry, such as economic conditions, changes in fashions, market saturation, retailer's capacity limits, etc. In fact, the courts have rejected the use of an S-curve to determine lost profits – and an S curve at least takes into account a "leveling off" of sales in the future. *See Lava Trading*, 2005 WL 4684238, at *18. Plainly then, Smith's use of a simplistic linear estimate based on unreliable data and unsubstantiated assumptions is unacceptable. Further, Hansen offers no explanation for

---

[4] Importantly, in his projections Smith used Plaintiff's total sales to Neiman, without even segregating sales of the allegedly copied jewelry line.

claiming that Plaintiff's profit margin is ▮%, when Plaintiff's own tax returns for 2006-2007 show that its profit averaged ▮%. *See* Riley Rpt. at 18.

Finally, Hansen's opinion that Plaintiff has suffered a $▮ million diminution in "enterprise value" is equally baseless. *Daubert* requires an expert's opinion be testable. *See Lava Trading*, 2005 WL 4684238, at *17 ("An expert must offer good reason to think that his approach produces an accurate estimate using professional methods, and this estimate must be testable. Someone else using the same data and methods must be able to replicate the results.") (citations omitted). Hansen fails to meet this standard because he does not support his estimate with any factual analysis. *See* Hansen Rpt. at 18. Nor does he disclose any methodology, instead simply claiming that his estimate "based upon the current purchase multiples paid in similar transactions" without identifying any "similar transactions." Hansen Rpt. at 18. Therefore, anyone trying to test Hansen's $▮ million estimate would have neither his methods nor the data Hansen purportedly used, making that task impossible. As a result, Hansen's estimate cannot be admissible.

## B.  Smith's and Hansen's Opinions Not Related to Damages Are Inadmissible

Both Smith and Hansen interlace their reports with their subjective opinions unrelated to the damages calculation. For example, they imply that an advertisement ran by Neiman in October 2006 "had clear potential and intent to confuse the customer" (Smith Rpt. at 5); that this advertisement was an attempt by Defendants to "creat[e] confusion and usurp[] authorship" (Hansen Rpt. at 14). Putting aside Hansen's admission at his deposition that he had not seen the ads full-sized and that when he saw them full-sized for the first time at the deposition they were "dissimilar" (Hansen Dep. at 155), these bold assertions are plainly outside the scope of permissible testimony – neither expert is qualified to opine on consumer confusion or third-party motivation, nor did they examine any facts underlying the placement of the advertisement by Neiman.

Smith also offers an opinion about the "design integrity" of Mimi So's jewelry, without offering any qualifications in the field of jewelry design. Smith Rpt. at 8. And Hansen includes a paragraph on consumer confusion, having no background on the subject. Hansen Rpt. at 14.

These extraneous opinions in these two reports should be excluded under *Daubert* for lack of pertinent expertise and sufficient foundation.

## C.   Smith's and Hansen's Opinions Will Not Be Helpful to the Trier of Fact

"[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos*, 303 F.3d at 266 (citation omitted). Smith's and Hansen's opinions regarding damages fail on every conceivable point: the data used are unreliable and unverified; the representation of these data is skewed, inaccurate and incomplete; the opinions go beyond experts' purported areas of knowledge; the methodology is either undisclosed or unacceptable by any scientific standards; and the connection between experts' conclusions and the available data is lacking. In fact, according to their own characterization, there experts' reports boil down to circular reasoning: "If you assume infringement, as I did, we believe that the sales were diminished because of the infringement . . . ." Hansen Dep. at 51.

## III. THE COURT SHOULD EXCLUDE PLAINTIFF'S LIABILITY EXPERTS, JONAS AND LEWAND

## A.   Jonas's and Lewand's Opinions Will Not Be Helpful to the Trier of Fact

Rule 702, Fed. R. Evid, allows expert testimony only "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." "[E]xpert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge 'if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses

possessed of special or peculiar training, experience, or observation in respect of the subject under investigation.'" *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962) (citation omitted).

## 1.   *The Subject Matter is So Simple as to Not Require Experts' Help*

In copyright infringement cases, where the works are not "highly technical," "[t]he jury can review the two works and decide for itself whether there are similarities that are probative of copying and how probative of copying those similarities are." *Price v. Fox Entm't Group, Inc.*, 499 F. Supp. 2d 382, 389 (S.D.N.Y. 2007). Because this case involves simple gold hoop chains and earrings (*see, e.g.*, Jonas Rpt. at Ex. 6), Lewand's and Jonas's testimony does not offer any specialized assistance to the jurors, who are "capable of recognizing and understanding the similarities between the works without the help of an expert." *Id.*

## 2.   *Jonas and Lewand Do Not Attempt to Distinguish Between Similarities that Relate to Unprotectable, Commonplace Jewelry Forms, as Opposed to Protectable Expression*

Where the works are not simple forms, as here, liability experts in copyright cases may opine as to similarities that are probative of copying. *See Castle Rock Entm't v. Carol Publ'g Group*, 150 F. 3d 132, 137 (2d Cir. 1998) ("'probative,' rather than 'substantial' similarity is the correct term in referring to the plaintiff's initial burden of proving actual copying by indirect evidence. . . . 'It is only after actual copying is established that one claiming infringement' then proceeds to demonstrate that the copying was improper or unlawful by showing that the second work bears 'substantial similarity' to protected expression in the earlier work.") (citations omitted).

Both Jonas and Lewand opine in their reports that "this appears to be a situation of a designer copying" Plaintiff's jewelry collection. Jonas Rpt. at 6; Lewand Rpt. at 5-6, 7. Because neither Jonas nor Lewand make any effort to determine whether the similarities in the jewelry relate to design elements that are original to plaintiff or merely to unprotectable ideas and commonplace jewelry forms, their testimony is not helpful on the question of probative similarity. Indeed, Lewand admitted at his depositions that he had not looked for "prior art" and

had not been asked to so. *See* Lewand Dep. at 174. Accordingly, Jonas's and Lewand's testimony is inadmissible.

### B.   Jonas and Lewand Have No Expertise to Opine on Consumer Confusion

An expert must have expertise related to the opinion. *See Daubert*, 509 U.S. at 597; Fed. R. Evid. 702, 703. Jonas is a jewelry historian. Jonas Rpt. at 1, 2. Lewand is a jewelry appraiser. Lewand Rpt. at *Curriculum Vitae.* Although both experts opine that the appearance of the two lines of jewelry "would certainly confuse a purchaser" (Lewand Rpt. at 3, 4; Jonas Rpt. at 6, 7, 8), neither has the specialized information or expertise necessary to testify as to consumers' perceptions or behavior. Indeed, both have admitted that they did not conduct any survey or other market research. Jonas Dep. at 81-83; Lewand Dep. at 72-73. Jonas's and Lewand's opinions as to consumer confusion are purely conjectural. Therefore, their opinions as to the likelihood of consumer confusion lack a reliable foundation and "will be of little value to a finder of fact." *Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 302 (S.D.N.Y. 2001) (Marrero, J.) (former retailing executive had no experience to opine on likelihood of confusion of trademarks; opinion excluded as "merely conjectural.")

### C.   Jonas's and Lewand's Incidental Opinions Are Inadmissible

Jonas and Lewand offer a number of incidental opinions not related to the question of copying and far from their areas of expertise. Jonas opines on the devaluation of Plaintiff's brand and intellectual property and on the reasons why Mimi So allegedly do not have samples of accused jewelry. Jonas Rpt. at 8, 9. Lewand, in turn, opines as to the Plaintiff's purported trade dress. Lewand Rpt. at 6. Such opinions are inadmissible because the witnesses lack any knowledge or expertise on valuation of intellectual property, third-party motivation, or the standards for protectable trade dress. Therefore, these incidental opinions should also be excluded.

## CONCLUSION

Opinions like those of Smith, Hansen, Jonas and Lewand are essentially argument of counsel under a different label. They are inadmissible under *Daubert* and under Rules 403, 701, and 702 Fed. R. Evid. As the Commentary to Rule 704 explains:

> Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach . . . .

For the reasons stated above, Defendants respectfully request that this Court exclude the reports and testimony of Plaintiff's four experts.

Dated:  New York, New York
        December 1, 2009

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By: _____

Richard Z. Lehv (*rlehv@fzlz.com*)
John P. Margiotta (*jmargiotta@fzlz.com*)
Alexander L. Greenberg (*agreenberg@fzlz.com*)
866 United Nations Plaza
New York, New York  10017
Tel.: (212) 813-5900
Fax: (212) 813-5901

*Attorneys for the Richemont Defendants*

Deepro R. Mukerjee
(*Deepro.Mukerjee@alston.com*)
90 Park Avenue
ALLSTON & BIRD LLP
New York, NY 10016
Tel.: (212) 210-9501
Fax: (212) 922-3881

*Attorneys for Defendants Mimi So and
Mimi So International, Inc.*